Doil L. DOVER, Respondent,

v.

Robert E. STANLEY, Respondent,

v.

GRANETO DATSUN, INC., Appellant.

No. WD 32661.

Missouri Court of Appeals,
Western District.

May 10, 1983.

James M. Byrne of Lashly, Caruthers, Baer & Hamel, P.C. and Karl E. Holderle III, St. Louis, for appellant.

Robert J. Harrop of Gage & Tucker, Kansas City, for respondent Stanley.

Carl R.J. Sniffen of Stubbs & Mann, P.C., Kansas City, for respondent Dover.

Before MANFORD, P.J., and WASSERSTROM and KENNEDY, JJ.

MANFORD, Presiding Judge.

This is a civil action tried to a jury for recovery of damages for violation of § 407.-535 [1] and 15 U.S.C. § 1988 [2] (Missouri and Federal Odometer Disclosure Statutes) and § 407.020–025, RSMo 1973 (Missouri Merchandising Practices Act). The jury returned its verdict awarding plaintiff (Dover) $1,000 in actual damages, plus $4,000 in punitive damages against defendant Graneto Datsun, Inc. The jury also found for defendant Robert Stanley as to plaintiff's claim against Stanley. The jury awarded Stanley (on his cross-claim) the sum of $450 in actual damages and $100 in punitive damages against defendant Graneto Datsun, Inc. To those jury awards in favor of plaintiff Dover, the court added the sum of $6,038.55 for attorney fees and the sum of $123 for attorney expenses. The court further added (for defendant Stanley) the sum of $2,520 for attorney fees and the sum of $225 for attorney expenses. The judgment is affirmed in part as modified and reversed in part and remanded.

On this appeal, defendant Graneto Datsun presents seven points, four of which

---

1. Section 407.535, enacted in 1973, was repealed by L.1977, S.B. 180, § 1. Refer now to § 407.536.

2. Aside from a mere allegation in the initial petition, the record both at trial and on this appeal reflects no further reference or reliance upon the federal statute. See *Charles Palermo Co., Inc. v. Wyant,* 530 S.W.2d 15 (Mo.App. 1975) and *Komanetsky v. Missouri State Medical Association,* 516 S.W.2d 545 (Mo.App. 1974). In addition, jurisdiction is under the act concurrent. There is no preemption. The act [§ 1989(b) ] provides for concurrent jurisdiction. See also *Mataya v. Behm Motors, Inc.,* 409 F.Supp. 65 (E.D.Wis.1976); *Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397 (S.D.W.Va.1975); and *Niehaus v. Joseph Greenspon's Son Pipe Corporation,* 237 Mo.App. 112, 164 S.W.2d 180 (Mo.App.1942).

relate to the judgment for Dover. Because of the disposition herein, only one of those four points is discussed relative to the basis for reversal as to Dover's claim. In anticipation that this cause will be retried, other issues raised as alleged errors are discussed for the purpose of directions to the trial court.

The controversy giving rise to this action centers upon a 1970 Volkswagen automobile. Plaintiff Dover purchased the vehicle from Independence Volkswagen on November 9, 1976. At the time of the purchase, the vehicle odometer registered 13,916 miles. The purchase price was $1,795, less $795 trade-in allowance for Dover's wrecked 1973 Volkswagen. Prior to purchase, Dover and his wife made two or three trips to Independence Volkswagen, observed the vehicle, and found it to be clean and free of rust spots. They test-drove the vehicle. They testified that the salesman for Independence Volkswagen assured them that the vehicle had thirteen thousand miles on it. Dover testified that he did not recall if he observed an odometer statement on the vehicle at the time of purchase.

Dover testified that he experienced problems with the vehicle almost immediately after purchasing it. He stated that he became "suspicious" and made contact by mail with Stanley, the previous owner. In his letter to Stanley, Dover asked for verification of the vehicle's mileage. By return letter, Stanley informed Dover that the odometer had broken at 59,742 miles.

The evidence revealed that the Dovers used the vehicle for almost two years, during which time they claimed a repair expense of approximately $875. In August of 1978, the vehicle's engine stopped. Dover had the vehicle towed away and gave it to the towing party for the cost of the tow.

Stanley (the original owner) purchased the vehicle as a new vehicle in November, 1969. He continued to own and drive the vehicle. The odometer broke in December, 1974, registering 59,742 miles at that time. Approximately 600 miles later, on January 5, 1975, the odometer was replaced. The new odometer was installed, reflecting zero mileage. No sticker reflecting the odometer change was ever placed on the vehicle. In August, 1976, Stanley decided to trade the vehicle. At this point, the vehicle had some 79,000 actual miles on it. Stanley had also observed noises in the engine. When Stanley and his wife arrived at the Graneto dealership, they were met by a salesman named Reynolds. Discussion was held concerning the trade of the vehicle on another. The vehicle was test driven by Graneto's service manager. A conversation between Stanley, Reynolds, and the service manager ensued, during which Stanley advised the others that the vehicle had more miles on it than reflected by the odometer. Stanley further testified that he had a mileage log on the vehicle in the glove box, but never produced it because he was not asked for it. Both Mr. and Mrs. Stanley testified in general terms that they advised the employees of Graneto that the vehicle had more mileage on it than represented by the odometer, but neither of them offered any specific mileage account.

The Stanleys and Graneto entered into a buyer's agreement which included a statement that the vehicle had 13,000 miles on it. When the vehicle was traded by the Stanleys and they took possession of their new vehicle, they signed the title to the vehicle, along with an odometer statement. The odometer statement contained the following provisions:

"Federal regulations require you to state the odometer mileage upon transfer of ownership. An inaccurate statement may make you liable for damages to your transferee. Pursuant to 409(A) of the Motor Vehicle Information and Cost Saving Act of 1972. Public Law 92–513."

and . . .

"I hereby certify that the odometer on the above described used motor vehicle at the time of trade-in was 13,627 miles."

and . . .

"Repair on replacement of odometer prior to resale was necessary and odometer has been set at zero."'

It is obvious from the evidence that the Stanleys knew that the vehicle had more than 13,000 plus miles on it. The Stanleys testified that they told Graneto's employees about the mileage. Mr. Stanley also testified that he told Reynolds about the mileage and that Reynolds responded he would "take care of it." Stanley further stated that he did not recall if he asked Reynolds how the matter would be taken care of or whether Reynolds offered any explanation.

Reynolds testified that he had absolutely no recollection of the transaction with Stanley. To him, it was just "another deal" and he could not recall it from hundreds he had handled.

After Graneto accepted the vehicle, it was placed on its lot for retail sale. After not being resold for 30 days, the vehicle was "wholesaled" by Graneto to Independence Volkswagen. When "wholesaled", the odometer statement accompanying the transaction indicated the mileage to be 13,-669 miles.

Dover and Stanley testified to their claimed damages and expenses. The evidence closed. The jury returned its verdict, judgment was entered, and this appeal followed the denial of timely filed after-trial motions.

Graneto charges that the trial court erred in the submission of the following instruction:

"Instruction No. 14

If you find the issues in favor of plaintiff Doil Dover and against defendant Graneto Datsun, Inc., and if you believe the conduct of defendant Graneto Datsun, Inc. as submitted in Instruction No. 11 was willful, wanton, malicious, then in addition to any damages to which you find plaintiff Doil Dover entitled under Instruction No. 13, you may award plaintiff Doil Dover against defendant Graneto Datsun, Inc. an additional amount as punitive damages in such sum as you believe will serve to punish defendant Graneto Datsun, Inc. and deter it and others from like conduct."

The challenge to the foregoing instruction is based upon a double premise. It is first charged that the instruction does not properly state the law respecting punitive damages and the appropriate statutory method for computation of punitive damages. It is further charged that the instruction improperly delegated to the jury the assessment of punitive damages because such assessment is reserved to the court by statute.

■ Graneto's challenge is correct in both respects. In the first instance, if § 407.025.1 was the applicable statute (and as observed infra, it is found not to be the applicable statute), the above instruction was erroneous. Section 407.025.1 reads as follows:

"407.025. Civil action to recover damages—class actions authorized, when—procedure

1. Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, *to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing party attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.*" (emphasis added)

From the very wording of the foregoing statute, it can be observed that the award of punitive damages is reserved to the court and not the jury. The instruction was erroneous for its failure to follow or comply with § 407.025.1 because under that section, it should not have been given.

By contrast, if § 407.545.1 is the applicable statute (and as observed infra it is found that § 407.545.1 is the applicable sec-

tion), then the instruction was erroneous. Section 407.545.1 reads as follows:

> "407.545. Penalty for violation recoverable in civil action.
>
> 1. Any person who, with intent to defraud, violates any of the provisions of sections 407.510 to 407.555 shall be liable in civil damages to the purchaser or owner of the motor vehicle in an amount equal to three times the amount of actual damages sustained or one thousand five hundred dollars, whichever is the greater, and, in the case of any successful action to enforce the liability created by this section, the costs of the action together with reasonable attorney fees as determined by the court."

■ When this statutory language is compared with the instruction above, it is readily observed that the instruction did not follow or comply with § 407.545.1. That section prescribes the maximum amount of recovery as to damages and also permits the circuit court to assess costs and reasonable attorney fees where determined. It is noted that the statute *does not* authorize the trial court to assess attorney *expenses* and it was error for the court herein to have done so. Thus, the instruction was erroneous under § 407.545.1 as well, and the judgment must be reversed and the cause remanded due to the error in the foregoing instruction.

Dover's argument that the term "court" contained within the statute refers to both the court and the jury for purposes of the statute is not persuasive. Dover further argues that § 407.025.1 is the applicable statute, both as to the cause of action and assessment of damages. The determination that such contention is neither persuasive nor correct may be observed from the discussion of the issues which follow.

In anticipation that this cause will be retried, it is necessary to discuss and resolve other issues herein so that both the circuit court and the parties may be directed and guided thereby.

An underlying issue herein is whether a civil cause of action involving odometers on motor vehicles can be maintained under § 407.020.1–§ 407.025 or § 407.535 [3] —§ 407.545, or both, as occurred in the instant case. It falls to this court to decide this basic issue and necessitates an analysis and discussion of the particular statutes.

As observed from the pleadings and record, it is the position of Dover that a cause of action for recovery of civil damages can be maintained under either section (i.e., § 407.020.1–§ 407.025 or § 407.535 [now § 407.536]–§ 407.545). It is his argument that enactment of § 407.535–.545 provides a claimant with an alternative and/or additional source of recovery. Graneto, of course, contends that § 407.535 (now § 407.536) and § 407.545 are sections of Chapter 407, RSMo which limit § 407.-020–.025 and thus prescribe an exclusive remedy for civil damage claims premised upon transfers of motor vehicles wherein odometer readings and/or statements are involved. This dispute requires that we construe the statutes in question and declare the legislative intent applicable to the statutes.

The courts of our state are called upon with great frequency to determine the legislative intent of statutes passed by the Missouri General Assembly. In this quest, the courts rarely are privy to the actual expressed intent or reasoning of the General Assembly concerning the passage of a statute. This fact stems from the absence of any legislative record-keeping aside from the proposed bill or act and amendments thereto and the officially recorded votes upon those proposals. Our General Assembly does not maintain a legislative record as do their counterparts in the United States Congress (i.e., Congressional Record). Nor does our General Assembly follow the procedure of affixing a *text of section* to the bills and acts which they enact as is done in our sister state of California which describes the legislative intent of the particular bill or act. On occasion, legislative committee notes and reports are available, but

---

**3.** Now § 407.536.

these are not required or to be found as a ready source of legislative expression. Reference to the lack of such sources is not made to criticize our General Assembly as regards its practices and procedures, but merely to indicate that our courts are in most instances left to other devices in their efforts to ascertain and ultimately declare the legislative intent of our statutory law.

From the basic source, *Laws Missouri 1973–1974,* 77th General Assembly First and Second Regular and Extra Sessions, it is determined that the General Assembly undertook the revision of § 407.020 in conjunction with other sections within Chapter 407, RSMo. By passage of H.C.S.H.B. 55 (that is, House Committee Substitute for House Bill 55), Sections 407.010, 407.020, 407.030, 407.040, 407.050, 407.060, 407.070, 407.080, 407.100 and 407.110, RSMo 1969 were repealed and twelve new sections were enacted. Relative to the instant case, it suffices to point out that § 407.025 was created and the remaining sections in the new act have no direct application to the issues contested herein. Section 407.025 created the right of recovery of civil damages.

In the same legislative session, the General Assembly enacted H.B. 373. H.B. 373 was entitled, "An Act Relating to Motor Vehicle Odometers, With Penalty Provisions." By this act, sections 407.535 [4] and 407.545 were created. In H.B. 373, sections 407.510 through 407.555 were specifically drafted to pertain to motor vehicle odometers. The applicable statutory sections are a part of the Act created by Chapter 407 and are not sections merely assigned by the Revisor of Statutes. Nor was the subject matter within the declared sections subsequently assigned to Chapter 407 by the Revisor of Statutes. This action denotes the intent of the General Assembly that these new sections (§§ 407.510 through 407.555) were to be a part of Chapter 407. It is further observed that none of the sections (§§ 407.510 through 407.555) are dependent upon any other section within Chapter 407, including §§ 407.020–407.025.

The primary rule of construction is that we endeavor to reconcile and harmonize statutes that appear to be in conflict if it is reasonably possible. *S.W. Forest Indus. v. Loehr Employment, Etc.,* 543 S.W.2d 322, 323 (Mo.App.1976). Another cardinal rule is that where a specific statute and a general statute dealing with the same subject exist, the specific statute prevails over the general statute. *Dismuke v. City of Sikeston,* 614 S.W.2d 765, 766 (Mo.App. 1981). Our courts have often cited the principle that when statutes are repugnant to each other, a special statute will prevail over a general statute. *Consolidated School Dist. No. 1 of Jackson County v. Bond,* 500 S.W.2d 18, 22 (Mo.App.1973). Yet another provision adopted as part of the statutory construction process is that where one statute deals generally with a subject and another statute deals with the same subject in a more minute and definite fashion, the repugnancy between them will be resolved in favor of the special statute. Where the special statute is passed later, it is considered an exception or qualification of the prior general statute. *State v. Bey,* 599 S.W.2d 243, 245–46 (Mo.App.1980). In addition, where there exists statutes related to the same subject matter, they must be read together and the provisions of the statute having special application to a particular subject is deemed a qualification of the general statute. *Flarsheim v. Twenty Five Thirty Two Broadway Corp.,* 432 S.W.2d 245, 251 (Mo.1968) and *City of Raytown v. Danforth,* 560 S.W.2d 846, 848 (Mo. banc 1977).

Against the background of the foregoing rules and principles, we compare §§ 407.-020–407.025.1 with §§ 407.535–407.545. As noted above, revision of Chapter 407 occurred in 1973. This revision included the adoption of § 407.025 *and* § 407.535 and § 407.545. Section 407.020 prescribes as an unlawful practice any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression or

---

4. Later repealed and superceded by § 407.536     as noted previously.

omission of any material fact with intent that others rely upon such concealment . . ." This section also sets forth certain exemptions not applicable to the instant case. Section 407.025 then prescribes the recovery of damages for loss occasioned by persons and their transactions deemed unlawful under § 407.020, including class actions.

During this same revision (1973), the General Assembly enacted § 407.535 (now repealed) and § 407.545. These sections also address the unlawful practices prescribed in § 407.020, *but they specifically direct and address those unlawful practices in a special way and upon an exclusive subject, to wit, odometers.* There is no inconsistency or repugnancy between the sections. Rather, the latter sections (§ 407.535 and § 407.545) qualify § 407.-020–§ 407.025 when recovery is sought for unlawful practices when those unlawful practices arise out of or involve mileage odometers. Thus, § 407.535–§ 407.545 are a qualification of § 407.020–§ 407.025. *City of Raytown v. Danforth, supra.* By the very wording of § 407.535–§ 407.545, these sections can be observed as sui generis provisions designed to address a specific and particular unlawful practice prohibited by our law.

We conclude that the General Assembly did not intend or commit a useless act in enacting § 407.535–§ 407.545. *Anderson v. Dyer,* 456 S.W.2d 808, 813 (Mo.App.1970). The question thus becomes what did the General Assembly intend by its enactment of § 407.535–§ 407.545? We conclude that the General Assembly, by enactment of § 407.510–§ 407.555, including § 407.535 (now repealed) and § 407.545 intended that claims giving rise to the recovery of damages and the limits of recovery for unlawful practices stemming from or based upon motor vehicle odometers are limited to and must be pursued in conformity with § 407.-510 through § 407.555, and not upon the general provisions of § 407.020 and § 407.-025. It is so held herein.

Based upon this ruling, it is obvious that this case was neither pleaded nor tried in line with the applicable provisions, nor was the above instruction submitted in conformity to the applicable statutory law. This necessitates reversal.

On a final note, Graneto challenges the trial court's denial of its motion to dismiss the cross-claim of Stanley. Included within this challenge is a challenge to the instructions submitted relative to Stanley's cross-claim. This opinion does not discuss the issue of the instructions because appellant has failed to preserve for review the issue of instructions upon its failure to set forth challenged instructions. *Fallert Tool and Engineering Co. v. McClain,* 579 S.W.2d 751 (Mo.1979).

Graneto further argues that Stanley, by way of his cross-claim, sought contribution as a wrongdoer. The cross-claim did not seek contribution from Graneto as to any judgment Stanley might have faced upon Dover's claim against Stanley. Rather, the cross-claim was a separate claim against Graneto, claiming damages by Stanley for Graneto's inducement of an incorrect odometer reading by Stanley. Such cross-claim was a proper action in the instant proceeding. Graneto's reference to 15 U.S.C. § 1988 and 1989; *Mataya v. Behm Motors, Inc. and Stier v. Park Pontiac, Inc., supra,* is misplaced because those authorities address the question of contribution between wrongdoers under federal statutes. In the instant case, Stanley's cross-claim was presented upon a common-law action for fraud which is not prohibited by Chapter 407, RSMo 1978. The common-law action for fraud was pleaded in the cross-claim and the record bears sufficient evidence to submit this issue to the jury as fact-finder.

The only legitimate questions relative to that portion of the judgment are whether the sum of $450 awarded as actual damages, the sum of $100 awarded as punitive damages, plus the assessment by the trial court of the sum of $2,520 as attorneys fees and the sum of $225 in attorneys expenses may stand. As regards the sum of $450 actual damages, the evidence supports only a sum of $210. In light of that, by remittitur, this court reduces the amount of

actual damages to the sum of $210. As regards the sum of $100 as punitive damages, that sum is affirmed. As regards the award of $2,520 in attorneys fees and the sum of $225 as attorneys expenses, those sums were proper awards by the trial court. Recovery of those sums is permissible as expenses incurred by Stanley in his defense against the claim by Dover. Those expenses were incurred as a result of collateral proceedings between Dover and Stanley. *Duncan v. Townsend,* 325 S.W.2d 67 (Mo. App.1959); *Allstate Ins. Co. v. Hartford Acc. & Indem. Co.,* 311 S.W.2d 41 (Mo.App. 1958); *State ex rel. Moore v. Morant,* 266 S.W.2d 723, 727 (Mo.App.1954); and 25 C.J.S. *Damages* § 50 (1966).

There is nothing upon this record, nor is challenge made, that the amount of attorneys fees and expenses were unreasonable.

That portion of the judgment as to Dover is reversed and the cause remanded for further proceedings consistent with this opinion. Upon retrial, if any, it is noted that § 407.535 (now repealed) is controlling as having been applicable to the facts herein. That portion of the judgment as to Stanley is affirmed but modified to the extent that the amount for actual damages is reduced from the sum of $450 to the sum of $210.

All concur.