**Fred EDGAR, Jr., Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. WD 61991.**

Missouri Court of Appeals,
Western District.

July 20, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

Application for Transfer Denied
Oct. 26, 2004.

Andrew A. Schroeder, Appellate Defender, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Assistant Attorney General, Jefferson City, MO, for Respondent.

Before: ULRICH, P.J., EDWIN H. SMITH and LOWENSTEIN, JJ.

EDWIN H. SMITH, Judge.

Fred Edgar appeals from the circuit court's order overruling, after an evidentiary hearing, his Rule 29.15 [1] motion for

---

1.  All rule references are to the Missouri Rules    of Criminal Procedure, 2004, unless other-

post-conviction relief. After a jury trial in the Circuit Court of Jackson County, the appellant was convicted of ten counts: Count I for assault in the first degree, § 565.050;[2] Count II for armed criminal action (ACA), § 571.015; Count III for felonious restraint, § 565.120; Count IV for ACA, § 571.015; Count V for forcible sodomy, § 566.060, Count VI for ACA, § 571.015; Count VII for assault in the first degree, § 565.050; Count VIII for ACA, § 571.015; Count IX for kidnapping, § 565.110; and Count X for ACA, § 571.015. As a result of his convictions, he was sentenced, as a prior offender, § 558.016, to a total of seventy years in the Missouri Department of Corrections.[3]

In his sole point on appeal, the appellant claims that the motion court erred in denying his Rule 29.15 motion, after an evidentiary hearing, because, on the evidence presented at the motion hearing, the court was clearly mistaken in finding and concluding that he was not denied effective assistance of counsel for trial counsel's failure to challenge a juror for cause.

We affirm.

### Facts

On October 16, 1996, a ten-count indictment was handed down by a Jackson County grand jury, charging the appellant with one count of felonious restraint, § 565.120, one count of forcible sodomy, § 566.060, one count of kidnapping, § 565.110, two counts of assault in first degree, § 565.050, and five counts of ACA, § 571.015. The charges arose from events occurring on September 17, 1996, in which the appellant brutally assaulted Candace Woods, nearly killing her. On January 3, 1997, an information in lieu of indictment was filed, charging the appellant with the same ten counts found in the indictment, but as a prior offender.

The appellant's case proceeded to a jury trial on January 12, 1998. During *voir dire*, defense counsel questioned the panel concerning the State's burden of proof:

MR. TEJEDA: Does everyone understand the concept by rebutting, essentially that means that we don't have to prove or disprove what the State is saying? And so it goes to an issue of credibility. And that's an important concept, a concept that governs all trials. Does everyone understand that concept? Does anyone feel that we need further discussion to assure that everyone has a firm grasp of it? Mr. Robinson?

ROBINSON: Yes. It just seems to me that the defendant would at least make some type of a statement, some explanation for their side of the story—

MR. TEJEDA: Okay. Well, and that's—

ROBINSON: And if they do not, I don't know, it would leave doubts in my mind as to why they didn't.

MR. TEJEDA: Okay. Anyone else who shares that same opinion or that the defense should present evidence? There are no right or wrong answers. We need to examine how you feel

---

wise indicated.

**2.** All statutory references are to RSMo, 2000, unless otherwise indicated.

**3.** On *Counts I and II*, he was sentenced to concurrent terms of thirty-years. On Counts III and IV, he was sentenced to concurrent terms of seven years, to be served concurrently to the sentences imposed on Counts I and II. On Counts V and VI, he was sentenced to concurrent terms of twenty-five years, to be served consecutively to the sentences imposed on Counts I–IV. On Counts VII–X, he was sentenced to concurrent terms of fifteen years, to be served consecutively to all other counts.

about it and there are no right or wrong answers with regard to this. Is there anyone else who feels the same way? Okay. I'm seeing a number of hands here. Let's see, Ms. Garrett?

GARRETT: Karen Garrett.

Shortly thereafter, the court adjourned for the evening. The following morning the defense continued its *voir dire:*

MR. TEJEDA: Ladies and gentlemen, yesterday when we broke, we were discussing burden of proof. I don't mean to get off on this and I'll just— this is the last question. I just need to make sure that everyone understands.

Is there anyone here who expects and insists that the defense should present any evidence in this case? Is there anyone who would automatically find my client guilty just because the defense decided not to present any evidence? And I'm not seeing any hands.

Ladies and gentlemen, one of the other principles that goes in hand with the burden of proof is the right not to testify. In this country of ours under the American Jurisprudence system, each of us has the right to either take the stand and testify or not testify and nothing negative can be inferred from that. That's one of the great things about being in America. Each of us has that right and it's guaranteed to each of us.

Now, should my client, Mr. Edgar, after he consults with both myself and Mr. Schlegel, if he should decide not to take the stand, is there anyone who would hold that against him? And I'm not seeing any hands this morning.

Let me ask the question this way. Is there anyone who, if Mr. Edgar chose not to take the stand, would automatically find him guilty simply because he chose to exercise that right and not take the stand. And, again, I'm not seeking any hands.

Venireperson Robinson was eventually excused from service, at his request, due to chronic back pain. However, Garrett's qualifications to serve on the jury were never challenged, and she was later seated as a juror in the case.

On January 16, 1998, the jury found the appellant guilty of all ten counts. On February 10, 1998, the appellant filed a motion for a new trial, which was denied on March 6, 1998. On that same date, the trial court sentenced the appellant, as a prior offender.

The appellant appealed to this court in *State v. Edgar*, WD 55627, 39 S.W.3d 112. On January 28, 2000, we issued a mandate affirming his convictions. Subsequently, the appellant timely filed a *pro se* Rule 29.15 motion, with counsel being appointed on December 14, 2000. On October 9, 2001, counsel filed an amended motion for post-conviction relief, alleging, *inter alia,* that trial counsel was ineffective for failing to challenge Garrett for cause, contending that she was not fair and impartial in that she had indicated in *voir dire* that she would have "doubts" if the appellant did not present evidence, including him testifying.

On July 6, 2001, the motion court held an evidentiary hearing on the appellant's amended Rule 29.15 motion. Trial counsel testified that there was no strategy involved in failing to challenge Garrett, and that *if* she was not subsequently rehabilitated, his failure to do so was an oversight. However, he could not recall whether he attempted to rehabilitate Garrett.

On September 3, 2003, the motion court entered its findings of facts and conclu-

sions of law denying the appellant's Rule 29.15 motion. In its conclusions, the motion court found that defense counsel had in fact rehabilitated Garrett, and, consequently: "There was no basis to excuse Ms. Garrett for cause. Counsel was not obligated to seek her removal. Counsel is not obligated to do meaningless acts."

This appeal followed.

## Standard of Review

Our review of a motion court's denial of a Rule 29.15 motion for post-conviction relief is limited to a determination of whether the court's findings and conclusions issued in support thereof, as required by Rule 29.15(j), are clearly erroneous. Rule 29.15(k); *State v. Clay*, 975 S.W.2d 121, 140 (Mo. *banc* 1998). Findings and conclusions are clearly erroneous only if, after a review of the entire record, the court is left with a definite and firm impression that a mistake has been made. *Clay*, 975 S.W.2d at 140.

## I.

In his sole point on appeal, the appellant claims that the motion court erred in denying his Rule 29.15 motion, after an evidentiary hearing, because, on the evidence presented at the motion hearing, the court was clearly mistaken in finding and concluding that he was not denied effective assistance of counsel for trial counsel's failure to challenge a juror for cause. Specifically, he claims that the evidence clearly established that his trial counsel was deficient for failing to challenge for cause juror Garrett after she had agreed in *voir dire* with a fellow venireperson's statement that: "[i]t just seems to me that the defendant would at least make some type of a statement, some explanation for their side of the story—[a]nd if they do not, I don't know, it would leave doubts in my mind as to why they didn't." This statement was

made in response to a line of questioning by the defense as to whether the members of the venire could follow the law with respect to the fact that the State had the burden of proof and that, therefore, the defense was not required to present any evidence to "rebut" the State's case, including the fact that the appellant was not required to testify.

In order to prevail on a claim of ineffective assistance of counsel, the movant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), requiring proof by a preponderance of the evidence that: (1) counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise in similar circumstances; and (2) the movant was prejudiced as a result. *State v. Simmons*, 955 S.W.2d 729, 746 (Mo. *banc* 1997). If either the performance or the prejudice prong of the test is not met, then we need not consider the other, and the movant's claim of ineffective assistance of counsel must fail. *Id.* To satisfy the performance prong, the movant must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment. *Id.* To satisfy the prejudice prong, a movant must show a reasonable probability that, but for counsel's alleged deficiencies, the result of the proceeding would have been different. *Id.*

Here, as to the performance prong, the appellant claims that trial counsel was deficient for failing to challenge Garrett for cause in that she had expressed an opinion in *voir dire*, indicating that she could not be fair and impartial. Thus, inasmuch as we will not convict trial counsel of being deficient for failing to do a futile act, *Brooks v. State*, 51 S.W.3d 909, 914 (Mo.

App.2001), to be successful on his claim of ineffective assistance of counsel, the appellant had to show, *inter alia,* that a reasonable probability existed that Garrett, if requested by his trial counsel, would have been stricken for cause, based on her "doubts" about the appellant's innocence should he fail to present evidence and/or testify at trial.

In accordance with the Sixth and Fourteenth Amendments to the U.S. Constitution and Missouri Constitution Article I, Section 18(a), a criminal defendant is entitled to a fair and impartial jury. *State v. Clark,* 981 S.W.2d 143, 146 (Mo. *banc* 1998). Likewise, a defendant is entitled to a full panel of qualified venirepersons, who can be fair and impartial. *State v. Thomas,* 70 S.W.3d 496, 507 (Mo.App.2002). A venireperson who expresses a bias against a defendant for exercising his Fifth Amendment right not to testify is not considered fair and impartial, *State v. Bishop,* 942 S.W.2d 945, 949–50 (Mo.App.1997), making him subject to being struck for cause. However, "where an answer to a question suggests a possibility of bias and upon further questioning, the venire [person] gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify the juror or deprive the trial judge of discretion to seat the venire [person]." *State v. Walton,* 796 S.W.2d 374, 377 (Mo. *banc* 1990). "This means that, if the prospective juror states he or she can set aside a stated concern, be fair and impartial, and follow the court's instructions, the prospective juror has been rehabilitated" and is qualified to sit on the jury. *State v. Wilson,* 998 S.W.2d 202, 205 (Mo.App.1999). "[T]he critical test [is] whether the venire [person] gave an equivocal or unequivocal response to the questions intended to rehabilitate [them]." *State v. Weatherspoon,* 728 S.W.2d 267, 271 (Mo.App.1987).

The motion court, while recognizing in its findings and conclusions that some of Garrett's responses during *voir dire* indicated that she had some initial concern about the defense not being required to rebut the State's case, including the appellant's not being required to testify, found that she had been rehabilitated by the subsequent questioning of defense counsel, indicating in her answers thereto that she would be a fair and impartial juror. In that regard, the record reflects the following:

MR. TEJEDA: Ladies and gentlemen, yesterday when we broke, we were discussing burden of proof. I don't mean to get off on this and I'll just— this is the last question. I just need to make sure that everyone understands.

Ladies and gentlemen, one of the other principles that goes in hand with the burden of proof is the right not to testify. In this country of ours under the American Jurisprudence system, each of us has the right to either take the stand and testify or not testify and nothing negative can be inferred from that. That's one of the great things about being in America. Each of us has that right and it's guaranteed to each of us.

Now, should my client, Mr. Edgar, after he consults with both myself and Mr. Schlegel, if he should decide not to take the stand, is there anyone who would hold that against him? And I'm not seeing any hands this morning.

Let me ask the question this way. Is there anyone who, if Mr. Edgar chose not to take the stand, would automatically find him guilty simply because he chose to exercise that right and not take the stand. And, again, I'm not seeking any hands.

Is there anyone here who expects and insists that the defense should present

any evidence in this case? Is there anyone who would automatically find my client guilty just because the defense decided not to present any evidence? And I'm not seeing any hands.

The State contends that this follow-up questioning and the failure of Garrett to raise her hand unequivocally indicated that she would not draw any negative inferences from the appellant's failure to present evidence or testify, and that, therefore, she qualified as a fair and impartial juror. The appellant claims, however, that Garrett's silence cannot be considered an unequivocal assurance of impartiality for purposes of rehabilitating her concerning her previous doubts about the appellant's possible failure to testify at trial. The question then is whether Garrett's silence to the general question of whether any member of the venire would "hold [it] against" the appellant if he chose not to testify or present any evidence, constituted an unequivocal assurance of her impartiality.

In *State v. Clark*, 55 S.W.3d 398 (Mo. App.2001), the Southern District of this court addressed the same issue confronting us here. In that case, a member of the venire initially indicated that she would have to hear from the defendant before she could acquit him. *Id.* at 403. Thereafter, the following exchange took place between the trial court and the venire:

> THE COURT: A number of you responded when [defense counsel] asked you about the defendant testifying or not testifying. You need to understand that the defendant has a constitutional right not to testify. I don't know whether he will testify or not testify in this trial. If, however, he chose not to testify and the court would then instruct you that you could draw no inference from the fact that he did not testify, how many of you could not follow that instruction?

> [The court reporter noted in the transcript that no hands were raised in response to this question.]

> You are entitled to your opinions. I don't want to scare anybody off, okay? Your opinions aren't wrong. I just want to know how many of you could not follow that instruction?

> [As before, the record reflects no jury panel member raised his or her hand in response to the court's question.]

*Id.* On direct appeal, the defendant claimed that the trial court erred in denying his motion to strike for cause the allegedly biased venireperson, who ultimately served on the jury. *Id.* He claimed that despite the juror's failure to respond to the trial court's rehabilitative question, the juror had not unequivocally indicated that she could be fair and impartial in that "silence can never be an unequivocal demonstration that one can be impartial sufficient to constitute rehabilitation." *Id.* at 404. The appellate court disagreed, holding that the juror's silence constituted an unequivocal assurance of impartiality sufficient for purposes of rehabilitation. *Id.* at 405 (citing *State v. Brown*, 669 S.W.2d 620, 623 (Mo.App.1984)). In doing so, the court explained that the juror "unequivocally stated, albeit by her silence, she could follow the court's instructions and the law and not form an adverse inference from Defendant choosing not to testify. This was sufficient for rehabilitation of a potential juror." *Id.*

In our case, Garrett indicated initially that if the appellant chose not to testify, "it would leave doubts in [her] mind as to why [.]" However, trial counsel then explained to the venire that not only does the State bear the burden of proof, but that the appellant indeed has a constitutional right not to testify. Thereafter, trial counsel again asked the venire several times if anyone would insist that his client testify,

or if anyone would hold it against him if he chose not to testify, to which no one responded. We fail to discern any distinction between our case and *Clark*.

For the reasons stated, we find that Garrett's response to defense counsel's follow-up questioning, albeit through silence, unequivocally assured her impartiality, qualifying her to serve as a juror such that the appellant failed to demonstrate, as required, that trial counsel was deficient for failing to challenge Garrett for cause on the basis alleged. Hence, we are not left with the firm impression that a mistake has been made with respect to the motion court's findings and conclusions in denying the appellant's Rule 29.15 motion.

Point denied.

### Conclusion

The order of the motion court denying the appellant's Rule 29.15 motion for post-conviction relief, after an evidentiary hearing, is affirmed.

ULRICH, P.J., and LOWENSTEIN, J., concur.